## IN THE COURT OF APPEALS OF IOWA

No. 24-1525
Filed May 21, 2025

**IN THE MATTER OF T.C., ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,**

**T.C.,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Des Moines County, Joshua P. Schier, Judge.

T.C. appeals the district court's order continuing his residential treatment. **AFFIRMED.**

Ryan D. Gerling of Cray Law Firm, PLC, Burlington, for appellant.

Brenna Bird, Attorney General, and Sarah Anne Jennings, Assistant Attorney General, for appellee State.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

T.C. appeals the district court's order continuing his residential treatment. Upon our review, we affirm.

### I.     *Background Facts and Proceedings.*

In February 2021, the Burlington Police Department brought T.C. to the emergency department after officers found him directing traffic wearing clothing inappropriate for the cold weather.  A month later, T.C. was arrested for disorderly conduct after flagging down cars on the street and "lying face down on the pavement."  These incidents sparked involuntary-commitment proceedings, which spanned nearly four years.

From early 2021 to late 2024, T.C. cycled in and out of court-ordered treatment.  Most outpatient stays lasted a few weeks or months before he returned to residential treatment.  But even while residing in treatment, T.C. made limited improvements.  His medical providers described him as refusing to comply with medication recommendations and behaving erratically, including verbal outbursts and throwing a chair.  T.C. also eloped several times, hitchhiking to gas stations to purchase alcohol and cigarettes.  One month before the review hearing, T.C. eloped four times in one week alone.  Around the same time, T.C.'s social worker testified he told her "George W. Bush wants him to kill himself."  And even just one week before the hearing, T.C. was still suffering from delusions, in which he had conversations with himself.

In September 2024, a review hearing occurred, after which the court ordered T.C. to continue residential treatment.  It also granted the treatment facility

the authority to "administer the medications they feel appropriate to [T.C.] over objection if necessary." T.C. only appeals the continued placement.

## II.     Review.

Our review of involuntary-committal proceedings is for correction of errors at law. *See In re B.T.G.*, 784 N.W.2d 792, 796 (Iowa Ct. App. 2010). "The district court's findings of fact are binding upon this court if supported by substantial evidence." *Id.* "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

## III.     Discussion.

T.C. vaguely argues that his placement option does not comply with Iowa Code section 229.23.[1]     *See* Iowa Code § 229.23 (2024) (entitling individuals "hospitalized or detained under this chapter" to certain enumerated rights). To support this contention, T.C. cites his lack of progress in residential treatment despite the significant length of time spent there. But we find the court did not err in finding his current placement was the best option. The record is replete with evidence that T.C. is not stable enough for outpatient treatment. T.C. admits in his own brief that he "has possibly gotten worse" since returning to inpatient treatment, and based on the testimonies, his medical providers agree. The facility's Associate Medical Director testified that if T.C. cannot be properly stabilized, he may even need a *higher* level of care. In the weeks leading up to the hearing, T.C. continued to suffer from delusions and absconded from treatment. The court found that even

---

[1] It is unclear what relief T.C. requests. While at the review hearing he requested transfer to an outpatient program, his brief suggests a higher level of care is necessary. For the reasons discussed below, we find neither option appropriate.

T.C.'s own testimony at the review hearing, in which he struggled to follow questioning and spoke over counsel, indicated his instability. We therefore find that substantial evidence supports the court's finding that he cannot return to outpatient treatment at this time.

But even so, we do not find the court erred by not transferring him to a higher level of care either. "It is not only the customary procedure, but the constitutionally and statutorily mandated requirement, to treat even seriously mentally impaired persons in the least restrictive environment medically possible." *In re R.B.*, No. 23-1336, 2024 WL 1553808, at *3 (Iowa Ct. App. Apr. 10, 2024) (citation omitted). While T.C.'s medical providers testified they had considered transfer, nothing could occur until T.C. complied with referral procedures. To alleviate issues stemming from T.C.'s refusal to comply with recommendations, the court authorized the facility to administer medications over his objections. Presumably, this was done in the hope that T.C. would receive proper medication management, improve, and then become eligible for transfer to another level if necessary. We do not find this decision to be error, but sound protection of T.C.'s rights. Substantial evidence similarly supports this finding, so we affirm.

### IV. Disposition.

Because there is substantial evidence supporting the court's findings, we affirm.

**AFFIRMED.**